**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**KELVIN T. CARPENTER,**

                **Plaintiff,**

     **v.**                                 **ACTION NO. 2:04cv757**

**HAMPTON ROADS SHIPPING ASSOCIATION,**

                **Defendant.**

## OPINION AND FINAL ORDER

_____This matter comes before the court on defendant Hampton Roads Shipping Association's ("HRSA") Motion for Summary Judgment.  For the reasons set forth below, the court **GRANTS** the defendant's motion.

### I.  Factual and Procedural History

Certain employers who engage in longshoring[1] at the Port of Hampton Roads have created a casual labor pool of longshoremen, from which the employers hire their employees.  Harrison Aff. at 1-2, ¶¶ 4-5.[2]  In order to enter the labor pool, prospective longshoremen must satisfy certain requirements established by the employers.  Id. at 2, ¶ 8.  One such requirement is that

---

[1]  Longshoring involves the loading and unloading of ships docked at a port. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1334 (3d ed. 1981) (defining "longshoreman" and "longshoring").

[2]  Daniel R. Harrison is employed by the HRSA as its Director of Port Safety.  Harrison Aff. at 2, ¶ 7.  Harrison completed an affidavit that HRSA attached to its motion.

prospective longshoremen must take a drug test and obtain a negative result. Id. The employers also have created HRSA, a § 501(c)(6) non-profit association of the employers. Id. at 1, ¶ 1. HRSA, on behalf of its employer-members, processes individuals for admission into the labor pool. Id. at 2, ¶ 6. This processing includes ensuring that the individuals satisfy the employers' requirements for employment, such as passing the drug test. Id. at ¶¶ 6 and 8. HRSA itself does not engage in longshoring activities and does not employ longshoremen. Id. at 1, ¶ 2.

Kelvin T. Carpenter ("Carpenter") received a letter from HRSA informing him that he was under consideration for entry into the labor pool. Pl.'s Compl. at 1, ¶ 1. On May 24, 2004, Carpenter reported to Norfolk International Terminals for processing by HRSA, which included producing a urine sample for the drug test. Id. at ¶ 2. On May 27, 2004, Daniel R. Harrison ("Harrison"), HRSA's Director of Port Safety, informed Carpenter that the test was negative for drug use, but that the urine sample was diluted. Id. at 2, ¶¶ 4-5. HRSA cannot rely on a diluted urine sample as an accurate specimen for determining if an individual uses drugs. Harrison Aff. at 2, ¶ 10. Carpenter was allowed to take a second drug test, but his urine specimen returned diluted once again. Id. at ¶ 11.

Harrison told Carpenter that unless he could provide an undiluted urine sample, he could not be processed for admission

into the casual labor pool.  Id. at ¶ 12.  Carpenter then informed Harrison that the specimen was diluted because he takes a dietary supplement to mitigate the side effects of an injury he suffered ten years ago.  Id. at ¶ 13.  Carpenter explained that, in 1994, he was robbed and shot three times.  Pl.'s Compl. at 3, ¶ 14.  The third shot entered his abdomen.  Id.  Subsequent surgery removed two feet of Carpenter's intestines.  Id.  As a result of the injury and the surgery, Carpenter must take the supplements in order to maintain regular bowel movements.  Id.; Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 4 (note from Carpenter's doctor explaining why Carpenter takes the dietary supplement).  However, Harrison explained to Carpenter that without an undiluted urine sample, HRSA could not process him.  Harrison Aff. at 3, ¶ 14.

On December 17, 2004, Carpenter, proceeding pro se, submitted a Complaint under Title I of the Americans with Disabilities Act ("ADA"),[3] asking for $50,000 and injunctive relief placing him in the casual labor pool.[4]  On May 4, 2005, HRSA submitted a Motion

---

[3] The ADA forbids discrimination against the disabled by three types of entities.  Title I deals with private employers with fifteen or more employees; Title II concerns certain public entities; Title III regards public accommodations.  BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW: VOLUME I 259 (3d ed. 1996). The same definition of disability applies to all three sections. See 42 U.S.C. § 12102 (2005).

[4] In his Complaint, Carpenter asked "to be reinstated in the fore mentioned position."  Pl.'s Compl. at 4.  The court interprets this request as praying for injunctive relief to place him in the casual labor pool.

for Summary Judgment, with two attached exhibits.  HRSA makes two arguments in support of its motion.  First, it contends that Carpenter is not disabled for purposes of the ADA and thus does not have an actionable claim.  Def.'s Mot. for Summ. J. at 5-6. Second, HRSA argues that it was not an employer or potential employer of Carpenter, and thus it is not subject to suit by him under the ADA.  Id. at 7-8.[5]  On June 14, 2005, Carpenter moved for an extension of time for responding to HRSA's motion, which the court granted on June 17, 2005.  On August 1, 2005, Carpenter submitted a response to Defendant's motion.[6]  Carpenter's response referred to eleven exhibits, but only attached the first six.  On August 9, 2005, HRSA submitted a rebuttal.  On September 13, 2005, the court issued an Order directing Carpenter to file exhibits 7, 8, 9, 10, and 11 with the court.  Carpenter has submitted those exhibits, and the matter is now ripe for review.

## II.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that a court shall grant a motion for summary judgment if it finds "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

---

[5] Because the court disposes of this motion on the first argument for summary judgment, it need not address the second ground.

[6] Carpenter titled his submission as "Kelvin T. Carpenter's Brief," but, for sake of clarity, the court will refer to it as his response to Defendant's motion.

4

P. 56(c) (2005). Thus, "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). Summary judgment becomes appropriate when the court, having viewed the record as a whole, finds that "it is not necessary to inquire further into the facts." Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).

With respect to materiality, the substantive law determines which facts are relevant. Anderson, 477 U.S. at 248. If the moving party demonstrates that there is a lack of evidence supporting an element essential to the nonmovant's case, the nonmovant must present evidence that establishes the existence of that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Thus, if the nonmovant argues facts that do not go to the element of his claim, then any dispute as to those facts is irrelevant and "will not be counted" by the court. Id.

As for genuineness, if the moving party presents evidence that supports its motion, or demonstrates that there is a lack of evidence supporting the nonmovant's case, the nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that "a reasonable jury could return a verdict for the nonmoving

party." Celotex Corp., 477 U.S. at 322-24.  All "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  However, the nonmovant may not rest upon mere allegations in its pleadings, but rather must set forth specific facts demonstrating that there are genuine issues for trial, Fed. R. Civ. P. 56(c), and must present evidence supporting those facts, First Nat'l Banks v. Cities Service Co., 391 U.S. 253, 288-90 (1968).  If the nonmovant believes that more discovery is necessary before it can demonstrate a genuine issue, the proper course is to file a Rule 56(f) affidavit stating "that it could not properly oppose a motion for summary judgment without a chance to conduct discovery."  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996).

**III.  Analysis**

**A.  Applicable Law**

In order to bring a claim under Title I of the ADA, a plaintiff must prove three elements: (1) that he has a "disability" as that term is defined by the ADA; (2) that he is otherwise qualified for the employment in question, with or without accommodation; and (3) that he was excluded from the employment solely on the basis of his disability.  See 42 U.S.C. § 12112(a) (2005);[7] Shafer v. Preston Mem. Hosp. Corp., 107 F.3d 274, 276 (4th

---

[7] Section 12112(a) provides:

No covered entity shall discriminate against a qualified

Cir. 1997).  HRSA moves for summary judgment on the ground that Carpenter failed to establish the first element, that he has a disability.  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Carpenter brings his claim under subsection (A).[8]

Although the ADA itself does not further define the terms in the definition of "disability" set forth in § 12102(2), the Equal Employment Opportunity Commission ("EEOC") has issued regulations

---

individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  The term "covered entity" includes "employer[s]."  42 U.S.C. § 12111(2).  HRSA disputes that it is an employer or potential employer of Carpenter.  Def.'s Mot. for Summ. J. at 7-8.  Because the court disposes of this motion on the ground that Carpenter does not have a disability as defined by the ADA, see infra at 10-19, the court does not address the issue of HRSA's employment relationship to Carpenter.

[8] Carpenter does not explicitly say that he brings his claim under subsection (A).  However, his argument is that his physical impairment interferes with his ability to obtain a longshoring position, Pl.'s Resp. at 1-2, ¶¶ 4-8, and with his ability to control his bowel movements.  Id. at 2.  This argument is a contention that the impairment substantially limits his major life activities of working and maintaining bowel movements.  See infra notes 10-11 and accompanying text.  Therefore, the court construes Carpenter's claim as seeking relief under subsection (A).

construing these terms.[9]  A physical impairment includes any physiological disorder affecting one or more of various body systems, such as the neurological, cardiovascular, or digestive systems.  29 C.F.R. § 1630.2(h)(1).  "Substantially limits" is defined as being "unable to perform a major life activity [or being] significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity."  29 C.F.R. 1630.2(j)(1).  A non-exhaustive list of major life activities includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(I).[10]  HRSA also assumes

---

[9] The ADA has not delegated to the EEOC, or any other agency, the authority to issue regulations implementing this definition. Sutton v. United Air Lines, Inc., 527 U.S. 471, 479 (1999). Therefore, it is unclear as to what extent courts are to defer to these regulations.  Id. at 480.  However, the Fourth Circuit has regularly used the EEOC's regulations to define these terms.  See, e.g., Palotai v. Univ. of Md., 38 Fed. Appx. 946, 954-55 (4th Cir. 2002) (unpublished); Rhoads v. FDIC, 257 F.3d 373, 387 (4th Cir. 2001); Foore v. Richmond, 6 Fed. Appx. 148, 151-54 (4th Cir. 2001) (unpublished).  See also C. GEOFFREY WEIRICH, EMPLOYMENT DISCRIMINATION LAW: 2002 CUMULATIVE SUPPLEMENT 163-82 (3d ed. 2002) (using EEOC regulations to construe the terms in the ADA's definition of "disability").

Additionally, HRSA cites the EEOC regulations, Def.'s Mot. for Summ. J. at 5-6, and Carpenter did not dispute their use, see Pl.'s Resp.  Thus, the court need not determine the validity of the regulations.  See Sutton, 527 U.S. at 480 ("Because both parties accept these regulations as valid, and determining their validity is not necessary to decide this case, we have no occasion to consider what deference they are due, if any."); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468 n.2 (4th Cir. 2002) (same).

[10] The Supreme Court has not yet determined the validity of this regulation, particularly whether "working" constitutes a major life activity.  Sutton, 527 U.S. at 492.  However, numerous courts

that bowel movements are a major life activity.  Def.'s Rebuttal at
1.  When determining whether an impairment substantially limits a
major life activity, a court should consider the positive and
negative side effects of treatments for the impairment.  See <u>Sutton</u>
<u>v. United Air Lines, Inc.</u>, 527 U.S. 471, 482 (1999).  Therefore, a
physical impairment that would significantly limit a major life
activity if not treated, but which has no such detrimental effect
if treated, is not a disability.  <u>Id.</u>

Determining whether a person is disabled under the ADA is an
individualized inquiry.  <u>Id.</u> at 483.  Hence, the issue is not what
are the typical impairments caused by a disorder, but how that
disorder specifically affects the instant plaintiff himself.  <u>Id.</u>
Finally, the plaintiff carries the burden of proving each of the
elements constituting the definition of "disability."  <u>See, e.g.</u>,
<u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 199 (4th Cir. 1997).

For purposes of this motion, HRSA does not contest that
Carpenter's injury to his intestines constitutes a "physical
impairment."  Def.'s Mot. for Summ. J. at 6.  HRSA's argument is

---

treat working as a major life activity, WEIRICH, EMPLOYMENT
DISCRIMINATION LAW: 2002 CUMULATIVE SUPPLEMENT 173, including the Fourth
Circuit, <u>see, e.g.</u>, <u>Rohan v. Networks Presentations LLC</u>, 375 F.3d
266, 277-78 (4th Cir. 2004); <u>Davis v. Univ. of N.C.</u>, 263 F.3d 95,
99-101 (4th Cir. 2001); <u>Haulbrook v. Michelin N. Am., Inc.</u>, 252
F.3d 696, 703-04 (4th Cir. 2001).  Moreover, because HRSA did not
contest that working is a major life activity, the court need not
determine this issue here.  <u>See Sutton</u>, 527 U.S. at 492 ("Because
the parties accept that the term 'major life activities' includes
working, we do not determine the validity of the cited
regulations."); <u>Pollard</u>, 281 F.3d at 467 n.1 (same).

that this impairment does not "substantially limit[] one or more of [Carpenter's] major life activities." Id. at 5-6. Therefore, the issue here is whether Carpenter's physical impairment makes him unable to perform, or significantly restricts his ability to perform, either his capacity for working or his bowel movements.[11]

### B.  Working as a Major Life Activity

_____If a plaintiff argues that a physical impairment significantly restricts his capacity for working, he must show that the impairment "significantly restrict[s his] ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. 1630.2(j)(3)(I).  A class of jobs is "the job from which [the plaintiff] has been disqualified ... and the number and types of jobs utilizing similar training, knowledge, skills, or abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(B).  In contrast, a broad range of jobs is "the job from which [the plaintiff] has been disqualified ... and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(C)  (emphasis added).

Factors  to  consider  when  determining  if  a  plaintiff  is

_____

[11] In its rebuttal, HRSA infers that Carpenter dropped his claim that his impairment substantially limits his ability to work. Def.'s Rebuttal at 1.  However, Carpenter's response still states that HRSA will not process him because of his diluted urine specimen, which was tainted due to the dietary supplements he takes to treat his physical disorder.  Pl.'s Resp. at 1-2, ¶¶ 4-8. Therefore, the court will construe Carpenter's response as arguing that his physical impairment substantially limits the major life activity of working.

precluded from working in a class of jobs are "[t]he geographical area to which the individual has reasonable access [and] the number and types of jobs utilizing similar training, knowledge, skills or abilities" as the job from which the plaintiff was disqualified. 29 C.F.R. § 1630.2(j)(3)(ii).  The plaintiff "must be precluded from more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." Sutton, 527 U.S. at 492.  An "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(I).[12]

---

[12] Various cases demonstrate how broad a class of jobs a plaintiff must be foreclosed from in order to be disabled under the ADA.  The Fourth Circuit has held that a plaintiff who could not be a teacher is not precluded from working in a class of jobs because she could work in any "number of jobs in the education field." Davis v. Univ. of N.C., 263 F.3d 95, 100-01 (4th Cir. 2001). Davis, 263 F.3d at 100, also favorably cited McGuiness v. Univ. of New Mexico Sch. of Med., 170 F.3d 974 (10th Cir. 1998). McGuiness concerned a medical school student who experienced anxieties when he took exams in chemistry or mathematics.  170 F.3d at 976-77. Due to his anxieties, the plaintiff performed poorly on his exams and was forced to retake the first-year curriculum. Id. at 977. Plaintiff brought a claim under Titles I and II of the ADA, arguing that the medical school discriminated against him based on his "anxiety disorder." Id.  However, the Tenth Circuit found that plaintiff's condition did not substantially limit the major life activity of working. Id. at 978.  Plaintiff's anxieties were specific to taking chemistry or mathematics exams. Id. at 977.  He was still able to study and pursue other academic disciplines. Id. at 977-79.  Therefore, plaintiff was not substantially limited in working because he was only precluded from pursuing medical studies. Id.  The court stressed that, "[f]or the purposes of the ADA, inability to pursue one career, such as medicine, does not

HRSA argues that Carpenter is merely precluded from performing
a particular job and thus he is not disqualified from working in a
class of jobs or a wide range of jobs.  See Def.'s Mot. for Summ.

---

constitute a severe impact on an individual's life." Id. at 979.
    Another relevant case is Foore v. City of Richmond, 6 Fed.
Appx. 148 (4th Cir. 2001) (unpublished).  In Foore, a seventeen-
year police veteran was discharged because he lost almost all
vision in one eye. Id. at 150.  Foore subsequently worked as a
security specialist for the City of Richmond, and was considered by
the City for a position as a senior communications officer.  Id.
at 150-51.  Foore also worked as a salesperson, a delivery driver,
a basketball official, and a magistrate. Id.  Foore brought an ADA
claim, arguing that the job of police officer was a class of jobs.
Id. at 154.  However, the Fourth Circuit held that Foore was not
disqualified from a class of jobs because "[t]he position of police
officer is simply too narrow of a field to be considered a 'class
of jobs.'" Id.  Rather, it is merely a particular job. Id. at
153.  The appellate court emphasized the City's consideration of
Foore for a position as a communications officer, and found that
because Foore was eligible for a number of jobs offered by the
City, he was not precluded from pursuing employment in a class of
jobs. Id. at 153-54.  Thus, the Fourth Circuit defined all jobs
offered by the City – not merely those pertaining to the skills and
knowledge of police officers – as the relevant class of jobs.
    Additionally, the EEOC regulations further demonstrate the
extent to which a plaintiff must be unable to find work in order to
qualify as disabled.  The regulations provide that:

> [A] professional baseball pitcher who develops a bad
> elbow and can no longer throw a baseball [would not] be
> considered substantially limited in the major life
> activity of working ... [He is] only unable to perform
> either a particular specialized job or a narrow range of
> jobs.  On the other hand ... an individual who has a back
> condition that prevents the individual from performing
> any heavy labor job would be substantially limited in the
> major life activity of working because the individual's
> impairment eliminates his or her ability to perform a
> class of jobs.  This would be so even if the individual
> were able to perform jobs in another class, e.g., the
> class of semi-skilled jobs.

29 C.F.R. 1630.2(j), App. (internal citations omitted).

J. at 6.  Carpenter does not specify whether he is significantly restricted from performing a class of jobs, a broad range of jobs, or both.  Because he focuses on being able to work as a longshoreman,[13] it appears that he is arguing either that disqualification from a particular job constitutes a substantial limitation on working, or that longshoremen work is a class of jobs in and of itself.

To the extent that Carpenter contends that disqualification from a particular job merits an ADA claim, he is clearly incorrect. See supra note 12 and accompanying text.  In order to be disabled under the ADA, Carpenter "must be precluded from more than ... a particular job of choice," Sutton, 527 U.S. at 492, because an "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working," 29 C.F.R. § 1630.2(j)(3)(I).  The ADA does not "protect[] 'every dream or desire that a person might have.'"  Davis v. Univ. of N.C., 263 F.3d 95, 100 (4th Cir. 2001) (internal citation omitted).  Rather, Carpenter must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."  See 29 C.F.R. 1630.2(j)(3)(I).  Thus, any dispute over

---

[13] Carpenter's Complaint and briefs have focused entirely on his pursuit of a longshoring career.  Carpenter explains that he has wanted to become a longshoremen for more than eighteen years. Pl.'s Resp. to Mot. for Summ. J. at 2.  During that period of time, he has applied to be a longshoremen seven times.  Pl.'s Compl. at 1, ¶ 1.  He entered the United States Army as a Federal Stevedore in order to develop his longshoring skills.  Id. at 1.

facts pertaining to disqualification from a particular job is immaterial because the dispute does not affect the outcome of the suit, and hence is not a dispute that can preclude summary judgment.  See Anderson, 477 U.S. at 248.

If Carpenter is arguing that longshoring is a class of jobs, there is no evidence in the record upon which a reasonable jury could find that longshoring – particularly longshoring at the Port of Hampton Roads – is a class of jobs in and of itself.[14]  Carpenter offered no evidence that loading and unloading cargo at ocean ports is so unique that it can be deemed a class of jobs.  In fact, the evidence shows that longshoring is but one type of position in a more general class of jobs that involves the loading and unloading of cargo in any venue.  Specifically, Carpenter's employment history and experience reveals that the handling of cargo is a skill set transferrable to many locations other than ports. Carpenter currently works as a "crewmember, crane operator, and supervisor" in the ship repair industry.  Pl.'s Reply at 2.  He entered the United States Army, not the Navy, to develop his trade, Pl.'s Compl. at 1, indicating that his skills are employable at more places than just ports.  While serving in the Army, Carpenter completed a Cargo Specialist course.  Pl.'s Reply, Ex. 5.  The fact

---

[14] It bears reminding that the relevant factors in defining a class of jobs are "[t]he geographical area to which the individual has reasonable access [and] the number and types of jobs utilizing similar training, knowledge, skills or abilities" as the job from which the plaintiff was disqualified. 29 C.F.R. § 1630.2(j)(3)(ii).

that the course regarded the handling of cargo in general, and not only the loading and unloading of cargo at ports, demonstrates that the relevant skill set in defining this class of jobs is the generic handling of cargo, not just longshoring.  Additionally, Carpenter apparently has worked with cargo in Fort Eustis, Virginia, and Fort Campbell, Kentucky, <u>see</u> <u>id.</u>, further showing that he is employable in land-locked areas.

Nothing in the record shows that cargo-handling at ports is distinguishable from the cargo-handling Carpenter has done in these other venues, thus making longshoring its own class of jobs. Moreover, this record reveals that Carpenter has had no trouble in finding employment currently, or at any point since his 1994 injury, that relates to the professional skills and knowledge that he possesses.  Thus, Carpenter is not excluded from this class of jobs.

Further, based on the evidence in the record, HRSA's decision to not process Carpenter only prevents him from working as a longshoreman in the Port of Hampton Roads.  Harrison Aff. at 1, ¶ 2; Pl.'s Resp. at 2.  Carpenter presented no evidence that he is foreclosed from working as a longshoreman in other ports in the geographical vicinity, or that all longshoreman positions in the area would require drug tests needing a clean urine sample.  Nor does the record show that working at the Port of Hampton Roads requires a skill set that is substantially different from the

skills required to handle cargo at other ports.[15]   Hence, the
exclusion here is not from longshoring in general, or even from
longshoring in a broad geographical area, but only from longshoring
at the Port of Hampton Roads.   Even if longshoring is a class of
jobs in and of itself, no evidence shows that Carpenter is excluded
from that class.   Therefore, the disqualification of Carpenter from
longshoring at the Port of Hampton Roads only forecloses him from
a narrow, particular position, which does not create a cognizable
claim under the ADA.   See supra note 12 and accompanying text.

### C.  Bodily Function as a Major Life Activity

_____Carpenter argues that his bodily function of bowel movements
is a major life activity.   Pl.'s Reply at 2.   HRSA concedes this
issue for purposes of its motion.   Def.'s Rebuttal at 1.   Moreover,
most courts have held that bowel movements are a major life
activity; however, these courts have found that the "substantial
limitation" requirement mandates that the restriction of bowel
movements must manifest with extremely negative symptoms.   See,
e.g., Maziarka v. Mills Fleet Farm, 245 F.3d 675, 680 (8th Cir.
2001) (finding that plaintiff is disabled by his irritable bowel

---

[15] Carpenter does infer that a position at the Port of Hampton
Roads is a good career opportunity.   Pl.'s Compl. at 2, ¶ 10.
However, the relevant issue here is not opportunity, but what
skills and knowledge are required to handle cargo at the Port of
Hampton Roads.   See 29 C.F.R. § 1630.2(j)(3)(ii).   There is simply
no evidence in the record upon which a reasonable jury could find
that longshoring at the Port of Hampton Roads constitutes its own
class of jobs because it requires skills and experiences
significantly different from other longshoring jobs.

syndrome because he experiences "periods of incapacity [during which he] is prevented from leaving home to go to work, performing manual tasks, or interacting with supervisors, co-workers, and store patrons, and is afflicted with substantial pain and intestinal discomfort"); EEOC v. Browning-Ferris, Inc., 262 F. Supp. 2d 577, 584-85 (D. Md. 2002) (finding that plaintiff's evidence would allow a jury to find that complainant's Crohn's disease constituted a disability because complainant lost forty pounds; cannot eat food some days due to lack of appetite; often experiences uncontrollable diarrhea when she eats; only eats at night, when she eats at all, because she is at home and has a change of clothes nearby when she soils herself; cannot eat a wide range of types of foods; and has found no treatments that mitigate her circumstances); Banks v. CBOCS West, Inc., 2005 U.S. Dist. LEXIS 9503, *2-3 and 20-21 (N.D. Ill. 2005) (unpublished) (finding that plaintiff's Crohn's disease constituted a disability because it produced pain and diarrhea on a daily basis, required him to go to the bathroom up to twelve times a day, caused sporadic "flare-ups" that prevented him from working, and resulted in weight loss); Mazza v. Bratton, 108 F. Supp. 2d 611, 169-70 and 174 (E.D.N.Y. 2000) (holding that plaintiff's evidence that his colitis produced diarrhea, bloody stool, loss of appetite, weight loss, severe cramps, inflammation, extreme pain, sleep deprivation, dehydration, nausea, and fatigue, was sufficient to create a triable issue as to

17

whether he was disabled); <u>Sacay v. Research Found. of the City Univ. of N.Y.</u>, 193 F. Supp. 2d 611, 627 (E.D.N.Y. 2002) (determining that plaintiff failed to produce sufficient evidence to raise a genuine issue of material fact that she was disabled because, although her irritable bowel syndrome required her to be near a bathroom, she did "not indicate her symptoms or how severe they are; how long the colitis will last; whether she is in pain and if so the frequency and severity of the pain; or how much control she has over her bowel movements, whether she has ever soiled herself, or how many times a day she must use the bathroom"); <u>Rivera v. Orange County Sch. Bd.</u>, 2000 U.S. Dist. LEXIS 14304, *18-19 (M.D. Fla. 2000) (unpublished) (granting summary judgment for defendant because although plaintiff's irritable bowel syndrome required her to use the restroom up to fifteen times a day, plaintiff could control the timing of her bowel movements and thus was not significantly restricted in the condition or manner under which she eliminated waste).

Carpenter states that the dietary supplements he digests "assist with keeping my bowels regular."[16] Compl. at 3, ¶ 14. He stresses that "[t]he dietary supplement only helps me have somewhat

_____

[16] "[I]f a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures – both positive and negative – must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the [ADA]." <u>Sutton</u>, 527 U.S. at 482.

of a regular bowel movement.  It does not give me a regular cycle."
Pl.'s Resp. at 2.  However, Carpenter has not presented evidence
showing that he has any restriction of bowel movements manifested
with the kind of extremely negative symptoms and side effects that
courts have mandated to show that a genuine issue exists as to
whether his condition meets the "substantial limitation"
requirement.[17]  Moreover, no evidence suggests that Carpenter's
bowel movements interfere with his ability to perform any other
kind of activity, such as manual tasks, walking, leaving his home,
or working.  In fact, the record suggests otherwise by demon-
strating that he is fully capable of working productively and
having a successful career.  See supra at 14-16.  Consequently, the
court finds that no reasonable jury could find, based on the
evidence in the record, that Carpenter's "somewhat" regular cycle
of bowel movements constitutes a significant limitation of a major
life activity.  Therefore, as a matter of law, Carpenter is not
disabled as that term is defined by the ADA.[18]

---

[17]See supra at 16-18 for cases setting forth examples of these
manifestations.

[18]Carpenter, a member of the Disabled American Veterans
("DAV"), states that it "howls" him that the ADA's standard is
higher than the DAV's.  Pl.'s Reply at 2.  The court is sympathetic
to his situation.  However, whatever are the DAV's standards for
defining disability, and whatever are the reasons underlying those
standards, it is not pertinent to an ADA claim.  Congress intended
for the ADA to protect only a small class of individuals, and not
to reach all persons who have conditions that impair their health
in some form.  Sutton, 527 U.S. at 484-87.  See also Toyota Motor
Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002) (stating that

19

## IV. Conclusion

The record shows no genuine dispute of a material fact with respect to whether Carpenter's physical impairment substantially limits a major life activity, the first element of an ADA claim. Carpenter did not present evidence that is sufficient for a reasonable jury to find that longshoring is a class of jobs, or that his physical impairment substantially restricts his bowel movements. Hence, there is no genuine dispute as to those issues. Moreover, Carpenter's disqualification from working in the Port of Hampton Roads is an exclusion from working in a particular job, and thus any dispute regarding that issue is immaterial as to Carpenter's ADA claim. Accordingly, the court **GRANTS** HRSA's Motion for Summary Judgment.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to plaintiff and to counsel for Hampton Roads Shipping Association.

---

the ADA's "terms need to be interpreted strictly to create a demanding standard for qualifying as disabled"). "The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune." <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 200 (4th Cir. 1997). Under this regime, Carpenter's impairment does not significantly limit any major life activity, and thus does not constitute a disability.

**IT IS SO ORDERED.**

/s/Rebecca Beach Smith

_____
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

December 8, 2005